Karen Veronica DeFio, Esq.
Joseph Zagraniczny, Esq.
Bond, Schoeneck & King, PLLC
*Attorneys for Village of Fleischmanns*
One Lincoln Center
Syracuse, New York 13202

Richard H. Weiskopf, Esq.
O'Connell and Aronowitz, PC
*Attorneys for Onteora Associates*
54 State Street, 9th Floor
Albany, New York 12207

*In re:  Onteora Associates*
Chapter 11 Case No.: 09-63107

*Onteora Associates v. Village of Fleischmanns*
Adv. Pro. No.: 09-80076

### LETTER-DECISION AND ORDER

The current matter before the Court is a motion for summary judgment filed by Debtor

Onteora Associates ("Debtor") on April 16, 2010 (the "Motion"), requesting an order "permitting

the property seized by the Village of Fleischmanns [(the "Village")] to be returned to . . .

[D]ebtor."   (Apr. 16, 2010 Affirmation of Richard H. Weiskopf, Esq. in Supp. of Mot. for

Summ. J. ¶ 2, ECF Adv. No. 7.)[1]   Debtor's Motion is presented to the Court for adjudication in

the context of Debtor's adversary proceeding brought pursuant to 11 U.S.C. § 548(a)(1)(B) (the

"Fraudulent Conveyance Action"),[2] wherein Debtor seeks to avoid an alleged fraudulent transfer

of certain real property to the Village by virtue of a pre-petition in rem tax foreclosure

proceeding commenced by the Village in the New York State Supreme Court, Delaware County

(the "County Court") (the "Foreclosure Action").  The Village filed an Answer in the Fraudulent

Conveyance Action on January 8, 2010 (ECF Adv. No. 4), asserting, *inter alia*, the affirmative

---

[1] Documents filed in the adversary proceeding will be referred to herein as "ECF Adv. No. __."  Documents filed in Debtor's main bankruptcy case will be referred to herein as "ECF No. __."
[2] Unless otherwise indicated, all section references herein relate to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (2010) (the "Bankruptcy Code").

defenses of res judicata and judicial estoppel.  The Village now opposes Debtor's Motion on multiple grounds.  After numerous consensual adjournments and a stipulated procedural delay to permit the Village to pursue an appeal in the Foreclosure Action, the parties agree that this matter is ripe for summary judgment.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(H), and 1334.

The record developed in connection with the Motion includes a Joint Stipulation of Facts filed on November 23, 2010 (the "Joint Stipulation," ECF Adv. No. 18), a Joint Stipulation of Issues filed on the same date (ECF Adv. No. 19), Debtor's Memorandum of Law filed on January 12, 2011 ("Debtor's Memorandum," ECF Adv. No. 20), and the Village's Memorandum of Law filed on the same date (the "Village's Memorandum," ECF Adv. No. 21).  At the Court's request, the parties have narrowed the issues for purposes of this Letter-Decision and Order to the following: (1) whether Debtor is estopped from asserting ownership of an interest in the subject real property located at 932 Main Street in the Village (the "Real Property") based upon (a) prior representations made by Richard and Brian Dowd (collectively, the "Dowds") in sworn and unsworn statements submitted to the state courts in the context of the Foreclosure Action and (b) prior holdings of the County Court and the New York State Supreme Court, Appellate Division, Third Department (the "Appellate Court") issued in the Foreclosure Action; (2) if Debtor is not estopped from asserting ownership, whether Debtor is a co-owner of the Real Property under New York Real Property Law; and (3) the legal effect of the expiration of the redemption period with respect to the Real Property and whether it constitutes a transfer of the Real Property for purposes of § 548.  (Joint Stip. of Issues ¶ 2.)

The issues presented make it apparent that this case essentially seeks to resolve a two-party dispute between Debtor and the Village.  Because the Court now writes only for the parties,

who are familiar with the unique facts and procedural history of both the Foreclosure Action and this Fraudulent Conveyance Action, the Court assumes familiarity with the Joint Stipulation and recites only those facts necessary to its analysis.

On December 11, 2008, pursuant to Article 11 of the New York Real Property Tax Law ("NYRPTL"), the Village commenced the Foreclosure Action by filing a petition in the County Court for unpaid real estate taxes with respect to properties with delinquent taxes for village tax years 1999–2000 and 2006–2007.  (Joint Stip. ¶ 5.)  The Real Property was included in the Foreclosure Action due to a tax delinquency in the approximate amount of $18,864.83.  (*Id.* ¶¶ 5, 8.)  The official tax records for the Village identify the Dowds individually as the owners of the Real Property.  (*Id.* ¶ 4.)  The Dowds affirmatively represented at all times in the Foreclosure Action that they were in fact the owners of the Real Property.  (*Id.* ¶ 11.)

The redemption period with respect to the Real Property expired on May 5, 2009.  (*Id.* ¶ 7.)  On or about September 25, 2009, the Village filed an application for a default judgment in the Foreclosure Action.  (*Id.* ¶ 9.)  On October 6, 2009, Brian Dowd filed an order to show cause in the Foreclosure Action seeking an order allowing the owners, whom he identified as himself and Richard Dowd, to redeem the Real Property upon payment to the Village of all delinquent real estate taxes with respect to the same, together with the apportioned costs, disbursements, and attorneys' fees incurred by the Village in connection with the inclusion of the Real Property in the Foreclosure Action.  (*Id.* ¶ 10.)  The County Court denied Brian Dowd's request for relief.  (*Id.* ¶ 13.)  On or about October 29, 2009, the Delaware National Bank of Delhi (the "Bank"), which holds a first mortgage on the Real Property, filed an order to show cause in the Foreclosure Action seeking to vacate the judgment of foreclosure, notwithstanding that a judgment had not yet been issued, and to extend the redemption period.  (*Id.* ¶ 14.)

On November 4, 2009, Debtor filed the instant Chapter 11 petition as a single-asset real estate debtor under § 101(51B), claiming in its accompanying schedules to be a co-owner of the Real Property (*id.* ¶ 27), together with the Dowds.  (ECF No. 1.)  The Dowds are listed in Debtor's schedules as joint partners, each holding a 50% partnership interest, in Debtor.  (*Id.* ¶ 20.)  Debtor's Schedule A, titled "Real Property," describes the Real Property as consisting of a movie theater, two stores, and one apartment.  (*Id.*)  Debtor's schedules and Statement of Financial Affairs list a fair market value for the Real Property in the amount of $331,717.00.  (*Id.*)  Debtor's Schedule D, titled "Creditors Holding Secured Claims," states that the Real Property was encumbered only by the Bank's lien in the amount of $62,400.00 and aggregate outstanding taxes due, including those due to the Village, in the approximate amount of $31,820.00.  (*Id.*)

During the pendency of Debtor's bankruptcy case, on December 14, 2009, the County Court decided the Bank's order to show cause.  The County Court ruled in favor of the Bank and, thus, issued an order requiring the Village to accept payment of past due taxes in the amount of $19,250.82 by either the Bank or the property owners (the "County Court Order").  (*Id.* ¶ 24.) On December 29, 2009, Debtor, the Village, and the Bank executed an Agreement and Stipulation to Set Aside the Automatic Stay in Debtor's Chapter 11 case (Joint Stip. ¶ 28; ECF No. 21), wherein the parties agreed that the automatic stay afforded by § 362 did not apply to an appeal of the County Court Order or alternatively, to the extent the stay did apply, the parties consented to modify the stay to allow the Village to pursue an appeal (*id.* ¶ 29).  On January 8, 2010, this Court entered an order approving the same.  (*Id.* ¶ 31; ECF No. 22.)  In the interim, on January 5, 2010, the County Court entered an order staying the County Court Order pending appeal.  On April 2, 2010, the Village perfected its appeal of the County Court Order (the

"Appeal") with the Appellate Court. (*Id.* ¶ 32.) On October 21, 2010, the Appellate Court issued a Memorandum and Order (the "Order on Appeal") (*id.* ¶ 39), wherein the Appellate Court reversed the County Court Order, denied the Bank's order to show cause, and granted the Village's motion for default judgment with respect to the Real Property (*id.* ¶ 41). On October 21, 2010, a default judgment was entered in the Foreclosure Action for the first time pursuant to the Order of Appeal (the "Judgment"). (*Id.* ¶ 42.)

Although the Dowds appeared in the Foreclosure Action and Appeal through their retained counsel, and Brian Dowd appeared personally at the hearing on the Bank's order to show cause, the Dowds never asserted during the course of the Foreclosure Action or Appeal that Debtor had any interest in the Real Property. (*Id.* ¶¶ 12, 18, 36.) Similarly, they never contested assertions by the Village or the Bank identifying them to be the owners of the Real Property. (*Id.* ¶¶ 19, 37.) Debtor never appeared in the Foreclosure Action or Appeal to assert that it was a co-owner of the Real Property. (*Id.* ¶¶ 22, 38.)

Accordingly, the parties in proceedings before this Court have principally focused upon whether Debtor may now claim an ownership interest in the Real Property such that Debtor may utilize Chapter 11 and this Court as a forum for avoiding the consequences of the Foreclosure Action. As a single asset real estate Debtor, the outcome of this litigation will have a significant effect on Debtor's case. If the County prevails on either one of its affirmative defenses, for example, Debtor will be left without an asset to reorganize. Each of the Village's affirmative defenses therefore requires careful consideration.

As the party raising the doctrine of res judicata, the Village bears the ultimate burden of proving its applicability. 2-25 WEINSTEIN, KORN & MILLER CPLR MANUAL (MB) ("WKM MANUAL") § 25.04[g] (2011). The Village correctly argues that this Court must look to New

York law to determine the effect of a state court judgment in Debtor's federal bankruptcy case. (Village's Mem. at 4–7); *see also* 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ("MOORE'S") §§ 133.02[2][c] (3d ed. 2011) ("The Full Faith and Credit Act, 28 U.S.C. § 1738, commands that state court decisions will be given the same res judicata effect in federal court that they would be accorded in the courts of the rendering state."). Citing state case law on the issue of the preclusive effect of a judgment of foreclosure (*see* Village's Mem. at 4–5), the Village contends that New York jurisprudence follows the transactional analysis approach, which embodies the general rule "that a judgment is conclusive between the parties and their privies upon all matters which were or might have been litigated therein." *The Tax Lien Co. of New York v. Schultze*, 106 N.E. 751, 752 (N.Y. 1914). Further, relying upon New York precedent (*see* Village's Mem. at 6), the Village asserts that "this rule applies as well to a judgment by default when the facts stated warrant the relief sought as to one rendered after contest." *Schultze*, 106 N.E. at 752.

"Under claim preclusion, a final judgment on the merits bars a subsequent action between the parties [or those in privity with the parties] involving the same cause of action; it also bars the relitigation of issues which might have been litigated, as well as those which actually were litigated." WKM MANUAL§ 25.02. "Defining what is meant by the same 'claim' or 'cause of action' is crucial, for there can be no claim preclusion if the claims are different." 10-5011 NEW YORK CIVIL PRACTICE: CPLR  (MB) ("NY CPLR") ¶ 5011.14 (2011). To do so, New York courts have developed a "broad, functional, transactional test" that "emphasizes the totality of the factual circumstances of the parties' relationship rather than the theory of recovery or remedy." *Id.* New York's broad definition of a claim for purposes of res judicata encompasses

"the aggregate of relief available arising from a common nucleus of operative facts." *Id.* at ¶ 5011.17.

Applying this test to the facts of the instant controversy, the Village asserts the following: (1) that the Dowds, in their individual capacities, were determined to be the owners of the Real Property (Village's Mem. at 6); (2) the Foreclosure Action reached a final conclusion for purposes of res judicata by virtue of the post-petition Order on Appeal and Judgment (*id.*); (3) there is privity between Debtor and the Dowds for purposes of res judicata because the Dowds are the sole partners of Debtor (*id.* at 6–7); (4) Debtor's Fraudulent Conveyance Action arises out of and is predicated on the same transaction, series of transactions, or foundational facts as the Foreclosure Action (*id.* at 7–8); and (5) because the issue of ownership of the Real Property was integral to the Foreclosure Action, the issue for this Court is whether Debtor holds an ownership interest in the Real Property that was already litigated or that could have been litigated in the Foreclosure Action (*id.* at 8).  For these reasons, the Village argues that the requisites of res judicata are satisfied here.

Following the Court's examination of Article 11 of the NYRPTL, which governs in rem tax foreclosure proceedings, and comparing the same with a cause of action under § 548 of the Bankruptcy Code, the Court disagrees and therefore must decline to give preclusive effect to the Judgment under the doctrine of res judicata.  Under somewhat similar circumstances, where a town had been granted a default judgment of foreclosure and the Chapter 7 trustee in a subsequent bankruptcy case sought to avoid the tax forfeiture under § 548, the Honorable Adlai S. Hardin, Jr., United States Bankruptcy Judge for the Southern District of New York, reached the same conclusion upon reasoning:

> [T]he state court only decided whether debtor was in default, whether debtor
> failed to redeem by the redemption deadline, and whether debtor had due notice

of the proceedings. The state court decision is res judicata as to those issues alone. [The town] correctly asserts that trustee or debtor may not relitigate the forfeiture of the Property [or] whether debtor received due notice. This Court could not reevaluate the state court's judgment of default in the forfeiture proceeding because the issues therein are res judicata.

. . . .

However, contrary to [the town's] assertion, the fact that the default judgment of foreclosure and forfeiture is res judicata does not signify that this Court cannot address trustee's federal bankruptcy claims that the tax forfeiture is avoidable under Section 548 of the Bankruptcy Code as not being for reasonably equivalent value. The state court did not and could not have addressed whether reasonably equivalent value was received for the Property under the Bankruptcy Code and how federal bankruptcy law might impact a tax forfeiture obtained pursuant to state law.

*Balaber-Strauss v. Murphy (In re Murphy)*, 331 B.R. 107, 131 (Bankr. S.D.N.Y. 2005). Because the two causes of action at issue between the parties here do not have a sufficient measure of identity, and Debtor did not have an opportunity to be heard on the merits of the § 548 claim or to litigate the same in the context of the Foreclosure Action, this Court likewise determines that the doctrine of res judicata is inapplicable under the facts and circumstances presented in this case. *See* NY CPLR ¶ 5011.17 (In order for res judicata to foreclose a subsequent suit, the two causes of action must "have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first.") (quoting *Schuylkill Fuel Corp. v. B. & C. Nieberg Realty Corp.*, 165 N.E. 456, 457 (N.Y. 1929)).

The Village's second affirmative defense of judicial estoppel, which requires less scrutiny, is equally unavailing. "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." MOORE'S ¶ 134.30. More specifically, "[j]udicial estoppel, or the doctrine of inconsistent positions, precludes a party who assumed a certain position in a prior legal proceeding and who secured a judgment in his or her favor from assuming a contrary position in another action simply because his or her interests have changed." *Matter of Hartsdale Fire Dist.*

*v. Eastland Constr., Inc.*, 2009 N.Y. Slip Op. 6844, at 3 (N.Y. App. Div. 2d Dep't Sept. 29, 2009) (quoting *Ford Motor Credit Co. v. Colonial Funding Corp.,* 626 N.Y.S.2d 527, 529 (N.Y. App. Div. 2d Dep't 1995)).  It is meant "to prevent abuses of the judicial system by which a party obtains relief by maintaining one position, and later, in a different action, maintains a contrary position."  *D & L Holdings, LLC v. RCG Goldman Co.*, 734 N.Y.S.2d 25, 30 (N.Y. App. Div. 1st Dep't 2001) (citing *Envtl. Concern v. Larchwood Constr. Corp.*, 476 N.Y.S.2d 175, 177 (N.Y. App. Div. 2d Dep't 1984)).

The Village argues that Debtor should be prohibited from asserting that it is a co-owner of the Real Property in connection with its bankruptcy case because this present assertion is clearly inconsistent with the Dowds' prior assertions that they were the owners of the Real Property (Village's Mem. at 10), and the Dowds were successful in maintaining this earlier position (*id.* at 11).  The Village further argues that, upon principle, Debtor should be judicially estopped from claiming an ownership interest in the Real Property "now that it has become strategic for it to do so."  (*Id.* at 12–13.)

The Court finds the Village's position and arguments with respect to judicial estoppel to be lacking on a singular ground.  The Dowds did not obtain a favorable judgment in the Foreclosure Action, which is the very reason Debtor is now before this Court.  The doctrine of judicial estoppel, therefore, is also inapplicable to bar Debtor from litigating its Fraudulent Conveyance Action, which is the sole purpose of Debtor's bankruptcy filing.

Given the foregoing discussion, the Court now reaches the merits of Debtor's § 548 claim.  Bankruptcy Code § 548(a) provides in pertinent part that:

> (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or

incurred on or within 2 years before the date of the filing of the petition, if the
debtor voluntarily or involuntarily–

(B)(i) received less than a reasonably equivalent value in exchange for
such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such
obligation was incurred, or became insolvent as a result of such transfer or
obligation . . . .

11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I).  It is well-established that a Chapter 11 debtor may utilize

this provision of the Bankruptcy Code to set aside a transfer of real property made in connection

with an in rem tax foreclosure proceeding pursuant to Article 11 of the NYRPTL.  *See, e.g.,*

*Herkimer Forest Prods. Corp. v. Cnty. of Clinton (In re Herkimer Forest Prods. Corp.*, 2005

Bankr. LEXIS 3260 (Bankr. N.D.N.Y. July 26, 2005).  In order to prevail on a § 548 claim, four

elements must be established in accordance with the statutory language set forth above: (1) the

debtor had an interest in the property; (2) a transfer of that interest occurred within two years of

the filing of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or

became insolvent as a result thereof; and (4) the debtor received "less than a reasonably

equivalent value in exchange for such transfer."   11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I).

Notwithstanding that the parties have devoted significant time to the question of whether Debtor

can prove that it had an interest in the Real Property so as to satisfy the first element, the Court

believes that the second element, requiring resolution of the date when title/ownership of the

Real Property transferred from Debtor or the Dowds to the Village, is entirely dispositive.

With respect to this element of proof, Debtor takes the position that the expiration of its

right to redeem the Real Property constitutes a transfer for purposes of § 548.  (Debtor's Mem. at

12.)  Debtor argues that the time of transfer is governed by § 548(d)(1), the application of which

turns on New York law, and that the transfer date must be the date upon which "Debtor's

equitable interest in the Real Property had been "effectively transferred to the Village."  (*Id.* at

13.)  If Debtor is correct, the transfer in this case would have occurred pre-petition on May 5, 2009, when the redemption period expired.  The Village, however, contends that in the context of an in rem tax foreclosure proceeding, a transfer for purposes of § 548 occurs at the point of final judgment after the expiration of the redemption period.  (Village's Mem. at 17–18.)  The Village submits that its position is supported by the respective holdings issued by the Honorable Margaret Cangilos-Ruiz, United States Bankruptcy Judge, in the *Martyak* case, *Martyak v. Tioga Cnty.*, 432 B.R. 25 (Bankr. N.D.N.Y. 2010), and the Honorable David G. Larimer, United States District Judge, in the *Wisotzke* case, *Wisotzke v. Ontario Cnty.*, 409 B.R. 20 (W.D.N.Y. 2008). Further, the Village suggests that NYRPTL § 1138 bolsters its position because it allows a tax district to withdraw any parcel of real property from a foreclosure proceeding at any time prior to final judgment if certain statutorily enumerated grounds are met.  (*Id.* at 18.)  If the Village is correct, the transfer in this case would have occurred post-petition on or after October 21, 2010, when the Judgment was granted and entered in the Foreclosure Action.

Understanding that the consequence of this Letter-Decision and Order will be harsh for Debtor, the Court agrees with the Village.  The Court finds Judge Larimer's reasoning in *Wisotzke* to be on point.[3]  Specifically, unlike a mortgage foreclosure action where title transfers simultaneously with the extinguishment of a debtor's right to redeem at or near the time of auction, *see Wisotzke*, 409 B.R. at 23 n.1 (discussing and differentiating *In re Rodgers*, 333 F.3d 64 (2d Cir. 2003)), Judge Larimer determined that "[a] different result is compelled [in an in rem tax foreclosure action], where by operation of state law, possession and title are transferred, and

---

[3] Although Judge Cangilos-Ruiz stated in *Martyak* that "[t]he filing of the deed transfer to Tioga County extinguished Debtor's legal title to and equitable interest in the real property . . . more than a month prior to Debtor's bankruptcy petition," *Martyak*, 432 B.R. at 37, such that the subject real property was not property of the estate under § 541(a)(1), *id.*, the Court notes that Judge Cangilos-Ruiz did not have reason to address the same question now before this Court.  There, unlike here, the transfer took place pre-petition by virtue of entry of a default order for judgment in the in rem tax foreclosure proceeding and the conveyance of the real property by the County Treasurer to Tioga County by deed on the same date.

redemption rights extinguished, by the judgment of foreclosure itself," *id.* (citing N.Y. REAL

PROP. TAX LAW §§ 1131, 1136(3)).

NYRPTL § 1136(3) provides in pertinent part:

When no answer has been interposed.  The court shall make a final judgment
awarding to such tax district the possession of any parcel of real property
described in the petition of foreclosure not redeemed as provided in this title and
as to which no answer is interposed as provided herein.  In addition thereto such
judgment shall contain a direction to the enforcing officer of the tax district to
prepare, execute and cause to be recorded a deed conveying to such tax district
full and complete title to such parcel.  Upon the execution of such deed, the tax
district shall be seized of an estate in fee simple absolute in such parcel and all
persons, . . . who may have had any right, title, interest, claim, lien or equity of
redemption in or upon such parcel shall be barred and forever foreclosed of all
such right, title, interest, claim, lien or equity of redemption.

N.Y. REAL PROP. TAX LAW § 1136(3).  The determinative question now before the Court is when

the Village became vested with title to the Real Property subject to perfection such that a transfer

is deemed to have occurred for purposes of § 548.  Notwithstanding that NYRPTL § 1131

provides for the extinguishment of a debtor's rights at the time his right to redeem the real

property expires, *Id.* § 1131, for purposes of § 548, the Judgment controls.

Based upon the foregoing, Debtor's Motion is hereby denied.  Further, on the Court's own motion, deeming it appropriate under the particular facts and circumstances of this case where the parties stipulated to the issues to be decided and Debtor was afforded notice and an opportunity to present its best case, summary judgment is hereby granted in favor of the Village. *See, e.g.,* 11-56 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE – CIVIL § 56.71[3] (2011); *Priestley v. Headminder, Inc.*, 2011 U.S. App. LEXIS 15533, *16 (2d Cir. July 28, 2011) (court may grant summary judgment *sua sponte* provided that certain procedural protections have been afforded to the losing party).

It is SO ORDERED.

Dated at Utica, New York
this 11th day of August 2011

_/s/ Diane Davis_____
DIANE DAVIS
United States Bankruptcy Judge